UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KENNETH G. WILLIAMS,

    Plaintiff,

v.

OREGON STATE BOARD OF PAROLE AND POST-PRISON SUPERVISION, is the administrative agency in charge of parole release decisions for Oregon prison inmates; MICHAEL WU, is the Chairperson for the Oregon State Board of Parole and Post-Prison Supervision; SID THOMPSON, is a member of the Oregon State Board of Parole and Post-Prison Supervision; CHRISTINE HERMAN, is a member of the Oregon State Board of Parole and Post-Prison Supervision,

    Defendants.

Case No. 6:17-cv-01894-AA

OPINION AND ORDER

AIKEN, District Judge:

Plaintiff, an inmate at Oregon State Penitentiary, filed suit alleging violations of the Americans with Disability Act (ADA), the Rehabilitation Act (RA), state discrimination laws, and his federal and state constitutional rights to equal protection. Defendants now move for dismissal, or alternatively, for summary judgment. For the reasons set forth below, defendants' motion is granted.

1 -   OPINION AND ORDER

BACKGROUND

In 1985 and 1986, petitioner was sentenced to consecutive prison terms after convictions on robbery and escape charges. Hsu Decl. Ex. 3 at 1 (ECF No. 10). In 1993, plaintiff was released on parole. *Id.*

On July 23, 2008, plaintiff was re-arrested and subsequently returned to the custody of the Department of Corrections (ODOC) after the Oregon Board of Parole and Post-Prison Supervision (the Board) found plaintiff had violated the conditions of his parole. *Id.*[1]

On February 28, 2009, the Board held a future disposition hearing and proposed a parole release date of July 22, 2016. *Id.*

On January 6, 2016, the Board held a parole hearing to consider plaintiff's projected release date. Hsu Decl. Ex. 1. The Board reviewed evidence regarding plaintiff's violations of ODOC rules while in custody and his mental status, including an evaluation from Dr. Gary McGuffin. Dr. McGuffin diagnosed plaintiff as suffering from "Other specified personality disorder (mixed personality disorder with antisocial and paranoid personality features)." *Id.* Ex. 1 at 2. The Board emphasized that Dr. McGuffin also reported:

> Consequently, Mr. Williams is still seen as being highly prone to exhibit poor judgment and easily act out at his inappropriate urges resulting in violating rules and showing disrespect and disobedience towards authority figures. Ongoing issues with lacking self-control when becoming emotionally charged indicate a high probability that Mr. Williams could not be successfully supervised if returned to the community and is seen as a moderate risk to reoffend. If Mr. Williams began using alcohol and/or illicit drugs, his risk to reoffend would be seen as severe.

*Id.* Based in part on Dr. McGuffin's report, the Board concluded that plaintiff has a "present severe emotional disturbance that constitutes a danger to the safety of the community" and

---

[1] Prior to 2008, plaintiff's parole had been revoked several other times. Hsu Decl. Ex. 1 at 3-4.

2 -   OPINION AND ORDER

deferred plaintiff's projected release date to July 22, 2020. *Id.* In addition to plaintiff's "mental or emotional disturbance," the Board noted plaintiff's history of misconduct while in ODOC custody and found that each factor would independently support the Board's decision. *Id.*

On May 12, 2016, plaintiff sought administrative review of the Board's order. Hsu Decl. Ex. 2. The Board denied relief and informed plaintiff that he could appeal to the Oregon Court of Appeals for judicial review. *Id.* Ex. 4. Plaintiff did not appeal.

On November 27, 2017, plaintiff filed the instant action.

## DISCUSSION

Plaintiff alleges that the Board and its members violated his rights against disability discrimination under the Title II of the ADA, the RA, and Oregon statutory law by extending his projected parole date due to his severe emotional disturbance. *See McCline v. Bd. of Parole & Post-Prison Supervision*, 205 Or. App. 144, 147-48, 133 P.3d 349 (2006) (discussing this Court's decision in *Daniels v. Cogswell*, Case No. 3:79-cv-651 (D. Or. Nov. 28, 1979) prohibiting the Board from denying or postponing parole solely on the basis of a severe emotional disturbance). Plaintiff also alleges that defendants violated his federal and state constitutional rights to equal protection, because defendants deferred his parole date because of his disability while releasing similarly-situated inmates without disabilities.

Defendants move for dismissal of plaintiff's claims, or alternatively, for summary judgment. To prevail on their motion, defendants must show that 1) plaintiff's allegations are not "plausibly suggestive of a claim entitling the plaintiff to relief," *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); or 2) there is no genuine dispute as to any material fact and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must construe the pleadings and evidence and all

3 -   OPINION AND ORDER

reasonable inferences in the light most favorable to plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).[2]

A. Eleventh Amendment Immunity

Defendants first argue that plaintiff's claims against the Board and his state law claims against all defendants are barred by the Eleventh Amendment. It is well established that states and their instrumentalities – such as the Board – are immune from suit in federal court absent waiver or abrogation of that immunity by Congress. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *see also Maine v. Thiboutot*, 448 U.S. 1, 9 n.7 (1980) ("No Eleventh Amendment question is present, of course, where an action is brought in a state court since the Amendment, by its terms, restrains only '[t]he Judicial power of the United States.'"). Thus, plaintiff's state law claims against the Board and its members, who allegedly acted in their official capacities, may not be brought in federal court. *Will*, 491 U.S. at 71 (remarking that "a suit against a state official in his or her official capacity is…no different from a suit against the State itself"). Further, plaintiff may sue only "persons" under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights, and states and their instrumentalities are not considered persons. *Id.* Accordingly, plaintiff's equal protection claim brought against the Board pursuant to § 1983 is likewise barred.

However, Title II of the ADA prohibits "public entities" from discriminating against a qualified individual on the basis of disability, and the ADA defines "public entity" to include "any State or local government" and "any department, agency,…or other instrumentality of a State." 42 U.S.C. § 12131(1)(A),(B); *see also id.* § 12132 (providing that "no qualified

---

[2] I need not decide whether defendants' motion is properly construed as a motion to dismiss or as a motion for summary judgment in light of the documentary evidence submitted. *See* Fed. R. Civ. P. 12(d). Under either standard, plaintiff's claims must be dismissed.

4 -   OPINION AND ORDER

individual with a disability" shall be denied or excluded from the "services, programs, or activities of a public entity"); *id.* § 12202 (abrogating Eleventh Amendment immunity for alleged violations of the ADA); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1184-85 (9th Cir. 2003) (finding abrogation of immunity under § 12202 to be valid). The Ninth Circuit has likewise found that "Congress validly abrogated the states' Eleventh Amendment immunity under Section 504" of the RA. *Miranda B.*, 328 F.3d at 1186. Thus, a state may be sued in federal court for allegedly violating the RA and Title II of the ADA. The ADA's prohibition against disability discrimination generally applies to state prisons and parole decisions, particularly when a prisoner alleges that the alleged discrimination violated a constitutional right. *United States v. Georgia*, 546 U.S. 151, 158-59 (2006); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-10 (1998); *Thompson v. Davis*, 295 F.3d 890, 896-98 (9th Cir. 2002). Thus, the Eleventh Amendment does not bar plaintiff's ADA or RA claims against the Board.[3]

B. Claim Preclusion

Defendants next argue that plaintiff's claims are barred by claim preclusion. *See Guzek v. Felton*, 2013 WL 1213330, at *2-3 (D. Or. Mar. 18, 2013) (finding that a previous Board decision barred a subsequent due process claim brought under § 1983). A final ruling of a state agency is given preclusive effect by federal courts if the agency was acting in a judicial capacity, resolved a factual or legal dispute properly before it, and the parties received a full and fair opportunity to be heard. *See, e.g., Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986); *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994). In particular, the Supreme Court in

---

[3] To the extent plaintiff alleges ADA and RA claims against the individual defendants under § 1983, "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

5 - OPINION AND ORDER

*Elliott* held that an unreviewed state agency determination could have preclusive effect over claims brought under 42 U.S.C. § 1983. The Court found that "Congress, in enacting the...civil rights statutes, did not intend to create an exception to general rules of preclusion." *Elliott*, 478 U.S. at 796-97. Similarly, state administrative proceedings likely have preclusive effect over RA and ADA Title II claims. *See Day v. Minnesota*, 2007 WL 4321999, at *8 (D. Minn. Dec. 6, 2007), *aff'd*, 354 Fed. App'x 272 (8th Cir. 2009) (citing cases and noting that "in the context of claims arising under Title II of the ADA, which address discrimination in public services, Courts have generally found that administrative decisions, by State Agencies, are to [be] afforded preclusive effect").

Here, the Board issued a final decision while acting in a judicial capacity; the Board resolved issues properly before it, i.e., whether to defer plaintiff's parole; and the parties had an adequate opportunity to litigate the issues raised. Finally, plaintiff was given the opportunity to seek administrative and judicial review, even though he did not pursue judicial review of the Board's decision. *See Elliott*, 478 U.S. at 799 ("we hold that when a state agency 'acting in a judicial capacity...resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts") (citation omitted). Thus, the Board's decision is entitled to the same preclusive effect given in Oregon courts, and plaintiff's claims are barred by claim preclusion. *Drews v. EBI Cos.*, 310 Or. 134, 140-42, 795 P.2d 531 (1990).

C. The Merits of Plaintiff's Claims

Regardless of claim preclusion, I find that plaintiff's claims fail on the merits. The crux of plaintiff's claims is that the Board violated his rights by deferring his projected parole date

6 -   OPINION AND ORDER

solely because he was diagnosed with a "severe emotional disturbance." *See generally* Compl. at 9-12. However, the Ninth Circuit has held that the ADA does not "categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability." *Thompson*, 295 F.3d at 898, n.4. Accordingly, because "Title II only prohibits discrimination against 'qualified' people with disabilities," a "person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether the individual is qualified for parole." *Id.*

Here, the Board did not categorically exclude plaintiff from parole based on Dr. McGuffin's diagnosis or the presence of a severe emotional disturbance. Rather, the Board found that plaintiff, based on an individualized assessment, suffers "from a present severe emotional disturbance *that constitutes a danger to the health or safety of the community.*" Hsu Decl. Ex. 1 at 2 (emphasis added). The Board also found that plaintiff's disciplinary record in prison independently supported the deferral of his parole date. *Id.* In other words, the Board did not defer plaintiff's parole solely due to his mental disturbance, but on grounds that the disturbance – along with his disciplinary record in prison – renders him a danger to the community. Consistent with the Ninth Circuit's ruling, this Court has held that the "denial of parole on grounds identical to those" raised by plaintiff does not violate the ADA. *Grimm v. Nooth*, 2015 WL 1609388, at *3 (D. Or. Apr. 7, 2015); *Roberts v. Nooth*, 2012 WL 5036475, at *3 (D. Or. Oct. 17, 2012); *Cheever v. Nooth*, 2012 WL 1114306, at *3-4 (Dr. Or. Feb. 1, 2012), *adopted by* 2012 WL 114117 (D. Or. Apr. 3, 2012); *see also Grimm v. Bd. of Parole & Post-Prison Supervision*, 258 Or. App. 595, 598, 310 P.3d 736 (2013) ("Petitioner points to nothing in either the ADA, ORS 659A.142, or case law interpreting those statutes, that would suggest that the board is obliged to

release a dangerous inmate into the community simply because the dangerousness is related to, or the result of, a disability.").

The Board's decision in this case is consistent with the Ninth Circuit's statement in *Thompson* and does not run afoul of the ADA or the RA. 42 U.S.C. § 12201(a) (generally, the ADA does not "apply a lesser standard than the standards applied under" the RA); *see also Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) (finding that courts must "construe the ADA to grant at least as much protection as provided by the regulations implementing" the RA). Accordingly summary judgment is warranted on plaintiff's ADA and RA claims.

Likewise, plaintiff cannot sustain an equal protection claim. Even assuming the Board treated him differently from prisoners without a severe mental disturbance, plaintiff cannot show that the Board's action was not rationally related to a legitimate state objective. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686-87 (9th Cir. 2001) (stating that "the disabled do not constitute a suspect class for equal protection purposes"); *Coakley v. Murphy*, 884 F.2d 1213, 1221-22 (9th Cir. 1989) ("When a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state objective.").

## CONCLUSION

Defendants' Motion to Dismiss or in the alternative for Summary Judgment (ECF No. 9) is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 21st day of September, 2018.

Ann Aiken
United States District Judge

8 - OPINION AND ORDER